IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

COROTOMAN, INC.,

                Plaintiff,

v.                                  CIVIL ACTION NO.   2:21-cv-00545

CENTRAL WEST VIRGINIA REGIONAL
AIRPORT AUTHORITY, INC., et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Bailey & Wyant, PLLC's Motion to Dismiss Crossclaim of Central West Virginia Regional Airport Authority Corporation* (Document 15-2), the *Renewed Motion to Dismiss Crossclaim of Central West Virginia Regional Airport Authority, Inc.* (Document 15), the *Memorandum of Law in Support of Bailey & Wyant's Motion to Dismiss Crossclaim of Central West Virginia Regional Airport Authority Corporation* (Document 15-3), *Central West Virginia Regional Airport Authority's Response in Opposition to Bailey & Wyant, PLLC's Motion to Dismiss* (Document 15-4), the *Notice of Previously Filed Reply to Central West Virginia Regional Airport Authority, Inc.'s Response to Bailey & Wyant's Renewed Motion to Dismiss* (Document 44), *Bailey & Wyant, PLLC's Reply to Central West Virginia Regional Airport Authority's Response in Opposition to Bailey & Wyant, PLLC's Motion to Dismiss* (Document 15-5), as well as the *Crossclaim Against Defendant Bailey & Wyant* (Document 15-1), and all attached exhibits.[1]

---

1 While the Court reviewed all attached and referenced exhibits and documents, for purposes of a 12(b)(6) motion to dismiss, the Court only considers the pleadings and other documents to the extent they are integral to the Crossclaim.

## FACTUAL ALLEGATIONS

This Crossclaim arises from litigation which stems from a 2012 Settlement Agreement entered into by the Defendant/Cross Claimant Central West Virginia Regional Airport Authority, Inc. (the "Airport Authority") and the Plaintiff Corotoman, Inc ("Corotoman").   The Airport Authority is a political subdivision of the State of West Virginia that owns and operates Yeager Airport in Charleston West Virginia. During this time, Defendant/Cross Defendant Bailey & Wyant, PLLC ("Bailey & Wyant") served as general counsel for the Airport Authority, acting primarily through founding and managing member Charles Bailey.   After Corotoman sued several defendants, including the Airport Authority and Bailey & Wyant, the Airport Authority subsequently brought a Crossclaim against Bailey & Wyant that is the subject of this *Motion*.

In the First Amended Complaint, Corotoman alleges that the Airport Authority entered into a Settlement Agreement with Corotoman in 2012, as part of an Obstruction Removal Project, related to a lower knoll that was obstructing flights in and out of Yeager Airport.[2]   Under the agreement, rather than transferring ownership of the relevant property to the Airport Authority, Corotoman would grant an avigation easement over the property to accommodate the new flight paths. Additionally, it alleges that the Airport Authority agreed to pay Corotoman $350,000 and to perform the work in an attached License and Work Agreement which required the Airport Authority to overblast the knoll by at least 35 feet and leave a finished a grade at least ten feet below the elevation of the planned easement.   It further alleges that the parties had agreed to a parcel exchange.   The Airport Authority denies the claims and all liability and alleges that the agreement was improperly signed by an unauthorized party and that performance of some of the

---

[2] For purpose of this *Motion,* the Court uses the description of the allegations in the First Amended Complaint as described and alleged in the Cross Complaint.

requirements would be unfeasible or impossible.   The Airport Authority asserts that to the extent the Settlement Agreement is enforceable, it was solely signed due to alleged negligent legal representation and handling by Bailey & Wyant.

In support of this conclusion, the Airport Authority alleges the following, including a purported range of errors and misrepresentations by Bailey & Wyant.   In connection with the project, the Airport Authority began to acquire real property through condemnation.   A large portion of the necessary property belonged to Corotoman.   Prior to initiating condemnation, and after appraisal of the property, the Airport Authority director at the time, Rick Atkinson, along with Bailey & Wyant, began negotiating a Settlement Agreement.   Mr. Bailey was sent a draft Settlement Agreement on March 27, 2012.   The next day, he attended a meeting of the Airport Authority's Board of Directors where the agreement was discussed.   At the meeting, the Board provided R. Edison Hill, Chairman of the Board, the authorization to sign the agreement. However, it made its approval contingent on review by Bailey & Wyant.   Bailey & Wyant then began reviewing the Settlement Agreement and its attachments, which included a License and Work Agreement, describing an obstruction removal project.   As of the board meeting, this License and Work Agreement required the Airport Authority to lower the obstruction by twenty feet below the final planned grade.

The Airport Authority alleges that on or around April 25, 2012, Joe Merical, an attorney for Corotoman, emailed Mr. Bailey to discuss the terms of the Settlement Agreement.   In the email, Mr. Merical informed Mr. Bailey of a new clause requiring $10,000 in liquidated damages per breach and proposed stylistic changes.   Two weeks later, he sent Mr. Bailey a redlined copy of both agreements.   In the redlined version, the overblast requirement was extended to thirty-five

3

feet which substantially increased the costs.   It was further complicated by utility lines that made the over blasting unfeasible.   Neither Mr. Bailey nor anyone at Bailey & Wyant informed the Board of Directors of the changes.

On June 21, 2012, Mr. Bailey informed Corotoman that Rick Atkinson, who was not given authority by the Board to sign the agreement, would sign the Settlement Agreement.   Despite Mr. Bailey's knowledge that the Board had given Mr. Hill authority to sign the agreement, after Mr. Atkinson reached out to him asking to prepare the agreement, he did so without determining if it was authorized.   Then, without Mr. Bailey seeing or reviewing the final version of the document, Mr. Atkinson signed it.

Further, the Airport Authority alleges that the Federal Aviation Administration (FAA) approval was required for airport property to be transferred, but Bailey & Wyant took no steps to ensure the FAA would do so.   Knowing this, Bailey & Wyant failed to include a contingency clause in the event the FAA did not approve the transfer.   This failure exposed the Airport Authority to liability for circumstances beyond its control.   Bailey & Wyant also assisted in preparing a document that led the FAA to believe the Airport Authority acquired ownership over the property when its interest was only an easement.   As a result, the FAA refused to release the Airport Authority's property for transfer and forced the Airport Authority to repay money it had received for the acquisition.

The Airport Authority alleges these failures formed the basis of Corotoman's suit against it.   Corotoman's claim stemmed, in part, from the inability to carry out the property exchange, which the Airport Authority claims was caused by Bailey & Wyant's failures.   Further, in the complaint, Corotoman alleges that Bailey & Wyant gave the impression that the Airport Authority

approved all changes to the Agreement. Additionally, Corotoman alleges that the Airport Authority's liability is premised on Mr. Atkinson signing the agreement, the failure to overblast the property, and the failure to perform the property exchange. The Airport Authority asserts that all of this was caused by either the legal malpractice or negligence of Bailey & Wyant.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual

inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570). A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

## DISCUSSION

Accepting all alleged facts as true and construing all reasonable inferences in favor of the Crossclaimant, the Court finds that the motion should be granted in part and denied in part. Based upon the alleged conduct of Mr. Bailey and his agents at Bailey & Wyant, PLLC, the Airport

Authority brings three claims against this Defendant, namely, (1) legal malpractice, (2) indemnification, and (3) contribution.   As detailed herein, the Airport Authority has properly pled its legal malpractice and indemnification claims, but its claim for contribution fails as a matter of law and must be dismissed.

### A.   Legal Malpractice

Bailey & Wyant argues that, assuming the legal malpractice claim is an independent cause of action, it should be dismissed because it is time-barred by the applicable statute of limitations. It argues that because the Airport Authority knew or should have known of all facts giving rise to the claim by 2015, application of the discovery rule would not toll the statute of limitations such that the claim would be timely.   Further, it argues that its representation of the Airport Authority effectively ended in 2016 and, therefore, the continuous representation doctrine does not save the claim.   The Airport Authority contests the validity of those assertions, and states that any determinations regarding the tolling of the statute of limitations would require factual inquiry, beyond the allegations, which is inappropriate in analyzing a motion to dismiss.

Initially, Bailey & Wyant disputes whether the legal malpractice claim is an independent cause of action, rather than a restatement of the claims for indemnification and contribution.[3] While the claims may indeed be related, the Court finds that, as pled, they represent distinct causes of action.   Any alleged legal malpractice could certainly form part of the factual basis underlying a claim for indemnification or contribution.   However, the Airport Authority alleges the requisite facts independent of those claims.   Moreover, the Airport Authority seeks distinct damages under

---

3 To support this contention, Bailey & Wyant points to the Airport Authority's *Reply in Support of Its Motion for Leave to File Crossclaim*, filed in the Bankruptcy Court proceeding. According to Bailey & Wyant, the Airport Authority essentially waived its ability to assert a legal malpractice claim. However, to determine whether the Crossclaim is legally viable, the Court must be guided by the allegations contained in the Crossclaim.

this claim.   While the claims are undoubtedly interrelated and stem from a common set of facts, the claim for legal malpractice is an independent cause of action on the face of the crossclaim. Thus, the Court addresses this claim independent of the others.

Generally, in West Virginia, in a legal malpractice suit, "the plaintiff must prove three things in order to recover: (1) the attorney's employment; (2) his/her neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate cause of loss to the plaintiff." *Syl. Pt. 1, Calvert v. Scharf*, 619 S.E.2d 197 (W. Va. 2005).   Here, these elements are unquestionably alleged.   While Bailey & Wyant moves for dismissal of the claim for alternative reasons, it does not seriously dispute that the substantive elements of the claim have been alleged.   The Airport Authority alleges that Bailey & Wyant was employed, that Bailey & Wyant neglected its reasonable duty in numerous ways through its handling of the Settlement Agreement and that these mistakes directly led to the Airport Authority's losses.   These allegations, if true, provide plausible grounds for relief.

Bailey & Wyant, however, asserts that the claim must be dismissed as time-barred by the statute of limitations.   Typically, a statute of limitations defense must be raised as an affirmative defense and the burden of establishing the defense is carried by the Defendant.   *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (citations omitted).   Accordingly, in a 12(b)(6) motion to dismiss, which tests the sufficiency of the complaint, courts generally cannot reach the merits of an affirmative defense.   *Id.*   Therefore, "[i]n deciding a motion to dismiss based on the statute of limitations, the Court should only grant the motion if it clearly appears on the face of the complaint that the plaintiff's claims are time-barred." *Williams v. West Virginia Div. of Corrs.*, No. 2:19-cv-496, 2020 WL 748873 (S.D.W. Va. Feb. 13, 2020) (citations omitted).   If all of the

8

necessary facts for the defense are not apparent on the face of the complaint, the motion must be denied. *Goodman*, 494 F.3d at 464.

In West Virginia, legal malpractice claims are subject to a two-year statute of limitations. W. Va. Code § 55-2-12.   Thus, given that the incident at issue occurred in 2012, absent some fact(s) which toll the statute of limitations, it would expire in 2014.   Certain doctrines, however, toll the statute of limitations and extend the period within which a claim may lawfully be brought. Two doctrines are relevant to the instant dispute: (1) the discovery rule, and (2) the continuous representation doctrine.

Under the rule, the statute of limitations does not begin to run until a claimant knows, or should know through the exercise of reasonable diligence

> (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of the entity has a causal relation to the injury.

*Dunn v. Rockwell*, 689 S.E.2d 255, 265 (W. Va. 2009).   Thus, the statute of limitations would not begin to run until the Airport Authority either became aware of the facts underlying the alleged legal malpractice or should have become aware through the exercise of reasonable diligence. While a party may ultimately have to *prove* what date it discovered the harm in response to an affirmative defense alleging a claim is time-barred, the party is not obligated to *plead* the date of discovery in the complaint itself. *Goodman*, 494 F.3d at 465-66.   "To require otherwise would require a plaintiff to plead affirmatively in his complaint matters that might be responsive to affirmative defenses even before the affirmative defenses are raised." *Id.*   Here, no allegations on the face of the Crossclaim directly illustrate that the Airport Authority had knowledge of the misconduct more than two years prior to filing the Crossclaim.   Determining when the Airport

9

Authority *should* have known of the misconduct would necessarily require factual determinations outside the scope of the pleadings, and thus the claim should not be dismissed on this ground.

Consideration of the continuous representation doctrine leads to a similar conclusion. Under the continuous representation doctrine, "the statute of limitations in an attorney malpractice action is tolled until the professional relationship terminates with respect to the matter underlying the malpractice action." *Syl. Pt. 6, Smith v. Stacy,* 482 S.E.2d 115 (W. Va. 1996).   It applies only when "there is clear indicia of an ongoing, continuous, developing, and dependent relationship." *Id. at Syl. Pt. 8.*   Here, the parties dispute when the relevant representation ended.   While Bailey & Wyant assert that the representation terminated in 2016, the Airport Authority argues that a 2019 filing by Bailey & Wyant illustrates that the relevant representation continued until that point.   In the Crossclaim itself, the Airport Authority asserts that Bailey & Wyant represented it at all times relevant to the Crossclaim.   No other allegations illustrate when the representation may have ended. Determining whether the relevant representation concluded in 2016 or 2019 would necessarily require factual inquiry.   As with the discovery rule, nothing on the face of the Crossclaim clearly shows that the continuous representation doctrine could not apply.   For the same reason stated above, the Airport Authority had no requirement to plead the continuous representation beyond what was included in the Crossclaim.   At this stage of the proceedings, the Court is unable to determine if the continuous representation doctrine is applicable under the facts presented.

Finally, many of the documents and facts utilized by Bailey & Wyant to support its arguments are not integral to the Crossclaim and, therefore, cannot be considered without converting the motion to one for summary judgment.   Based on the allegations contained in the

Crossclaim, the Court is unable to determine that the statute of limitations expired.   The motion to dismiss the legal malpractice claim must be denied.

### B.   *Implied Indemnification*

Bailey & Wyant argues that the Airport Authority's implied indemnification claim is legally impossible.   It argues that there is no plausible scenario in which the Airport Authority could lose its underlying claim against Corotoman, be in breach of contract, but have zero fault. The Airport Authority, however, has alleged precisely that.   It alleges that if not for the fraud and malpractice of Bailey & Wyant, the Airport Authority would not have entered the contract nor subsequently breached.   Accepting all alleged facts as true and construing all reasonable factual inferences in the Airport Authority's favor, the Airport Authority has properly pled its claim.

"Implied indemnity is based upon principles of equity and restitution and one must be without fault to obtain implied indemnity." *See Syl. Pt. 2*, *Sydenstricker v. Unipunch Prods., Inc.*, 288 S.E.2d 511 (W. Va. 1982).   West Virginia law requires the following elements for a claim of implied indemnity:

> (1) an injury was sustained by a third party; (2) for which a putative indemnitee has become subject to liability because of a positive duty created by statute or common law, but whose independent actions did not contribute to the injury; and (3) for which a putative indemnitor should bear fault for causing because of the relationship the indemnitor and indemnitee share.

*Syl. Pt. 4, Harvest Capital v. W. Va. DOE*, 560 S.E.2d 509 (W. Va. 2002).   In support of its motion, Bailey & Wyant points to two key requirements of the statute, (1) that the putative indemnitee's actions did not contribute to the injury, and (2) that a special relationship must be shared between the parties.   While it is true that to ultimately succeed on an implied indemnity claim, the indemnitee must be entirely without fault, the Cross Complaint presents that scenario.

The Airport Authority explicitly alleges that it is entirely without fault for any potential injury, and that any agreement was entirely dependent on Bailey & Wyant's review.  It alleges that Bailey & Wyant's conduct, specifically through Mr. Bailey, was directly responsible for the harm.  Among other factors, it alleges that despite his knowledge that Mr. Atkinson lacked the authority to sign any agreement, he worked directly with Mr. Atkinson to sign an agreement with substantially changed details, intentionally withheld from the Airport Authority.  Further, it alleges that the changes Mr. Bailey facilitated significantly impacted the feasibility of the project and exposed the Airport Authority to liability.  Additionally, it alleges that Mr. Bailey misled the Board about the FAA's willingness to approve the deal, and his efforts to facilitate that approval. The Airport Authority contends that but for that conduct, there would be no alleged breach of any Settlement Agreement and the Airport Authority would not have any potential liability to Corotoman in the underlying action.  Bailey & Wyant asserts that this is unlikely, but at this stage of the proceedings, a plaintiff must only assert plausible facts that, if true, state a claim.  The Airport Authority has alleged a plausible chain of facts that, if proven, could provide grounds for relief.  Therefore, the motion to dismiss the implied indemnity claim must be denied.

*C. Contribution*

Bailey & Wyant similarly argues that the claim for contribution is legally impossible for three reasons.  First, it argues that the claim for contribution should be dismissed because it accrued after West Virginia abandoned joint-and-several liability in 2015, essentially eliminating contribution.  It also argues that the claim should be dismissed because it owed no duty to Corotoman, and because the litigation privilege applies.  The Airport Authority counters that determining when the claim accrued is a factual question and thus inappropriate for consideration

12

at this time.  Further, it argues that Corotoman directly alleged misconduct by Bailey & Wyant that implicates the necessary "common obligation" to constitute the requisite duty, and that it is still an open question whether the litigation privilege even applies to contribution claims. However, because Bailey & Wyant's first argument is legally dispositive, the Court need not address the alternative arguments.

Traditionally, West Virginia has recognized the right of contribution in tort cases.   Under that right, a claim arose when, "persons having a common obligation, either in contract or tort, are sued on that obligation and one party is forced to pay more than his pro tanto share of the obligation." *See Syl. Pt. 4, Charleston Area Med. Ctr., Inc. v. Parke-Davis*, 614 S.E.2d 15 (W. Va. 2005).   "[The] right of contribution may be brought by a joint tortfeasor on any theory of liability that could have been asserted by the injured plaintiff." Syl. Pt. 3, *Sheetz, Inc. v. Bowles Rice McDavid Graff & Love, PLLC,* 547 S.E.2d 256 (W. Va. 2001).   However, the West Virginia legislature abandoned joint-and-several liability in 2015, which essentially eliminated the contribution cause of action in West Virginia for most claims.   *See Batemen v. CMH Homes, Inc.,* No. Cv. 3:19-0449, 2020 WL 597564, at *2 (S.D.W. Va. Feb. 6, 2020) (quoting *Clovis v. J.B. Hunt Transport, Inc.*, No. 1:18-cv-147, 2019 WL 4580045, at *3 (N.D.W. Va. Sept. 20, 2019) ("In effect, this broad rule amounts to 'the near total abolition of claims for contribution.'"). Under the revised statute, each defendant's liability "shall be several only and may not be joint." W. Va. Code § 55-7-13c. It allows a judge to assess liability against a defendant only according to their fault, and therefore, a disproportionate payment triggering a right to contribution is not permissible.   *Arch Ins. Co., v. Berkley Nat'l Ins. Co.*, 856 Fed. Appx. 439, 444 (4th Cir. 2021).

13

This revised statute retained only three limited circumstances where contribution is available.   These include: (1) if two or more defendants "conspicuously conspire and deliberately pursue a common plan or design to commit a tortious act or omission," W. Va. Code § 55-7-13c(a), (2) if a plaintiff is unable to collect from a liable defendant, W. Va. Code § 55-7-13c(d), or (3) if the damages were proximately caused by defendant's conduct which "constitutes []   (i) driving under the influence; (ii) criminal conduct; or (iii) illegal disposal of hazardous waste." W. Va. Code § 55-7-13c(h).   None of these have been alleged.   While the Cross Complaint does allege that there was some level of common obligation to Corotoman between the parties, nothing alleges conspicuous conspiracy and deliberate pursuit of a common plan.   In fact, the Airport Authority maintains it is without fault, and any liability would be due to Bailey & Wyant's alleged misconduct.   The second and third exceptions are inapplicable on their face.   The second only arises if both parties are found liable and the plaintiff is unable to collect from one of them, and subsequently collects a disproportionate share from a single defendant.   The third applies only in the discrete statutorily listed scenarios, which are certainly not present in the facts alleged.   Thus, if examined under the current statute, the facts alleged do not state an available claim for contribution.

Therefore, when a claim accrues is critical to determining whether it is permissible.[4]   In West Virginia, "the right of contribution arises at, and limitations begin to run from, the time of payment in excess of plaintiff's proportionate share[.]" *Hensel Phelps Const. Co. v. Davis &*

---

4 Of course, a defendant may assert a claim of contribution prior to the entry of judgment.   The Supreme Court of Appeals of West Virginia previously held that a defendant *must* assert the claim within the underlying action.   *See Syl. Pt. 4, Howell v. Luckey*, 518 S.E. 873, 874 (W.Va. 1999).   However, when the claim is appropriately filed is not at issue, but rather when the right accrues.   As discussed herein, it accrues upon judgment.   Further, even if the right accrued at the time of filing, this claim was not filed until well after the 2015 amendments.   Therefore, the analysis would be unchanged, and the claim would be similarly barred.

*Burton Contractors, Inc.*, 2013 WL 623071, at *3 n.5 (S.D.W. Va. Feb. 19, 2013) (quoting

*Bradford v. Ind. & Mich. Elec. Co.*, 588 F. Supp. 708, 714 (S.D.W. Va. 1984). This reflects an

adoption of the general rule articulated by the American Law Reports:

> "[A] claim for contribution based on tort… does not accrue, and the
> statute of limitations does not start to run thereon, at the time of the
> commission of the tort, or of the resulting injury or damage, but from
> the time of the accrual of the cause of action for contribution, which
> is at the time of payment of the underlying claim, payment of a
> judgment thereon, or payment of a settlement thereof, or at the time
> of other satisfaction or discharge of such claim in whole or in part,
> to an extent greater than his pro rata share of the common liability,
> by the party seeking contribution."

57 A.L.R.3d 867 § 3(a).   Applying this general rule and the rule applicable in West Virginia, prior

to a disproportionate judgment or payment, no claim for contribution has accrued.   In this case,

no judgment or disproportionate payment has occurred.   As a matter of law, even accepting all

facts as true, the claim for contribution has not yet accrued. Therefore, if or when such a claim

theoretically accrues, liability would be determined under the revised statute.   Contribution is not

an available remedy under the revised statute given the facts alleged.   Accordingly, because it is

not a plausible or permissible claim for relief, the claim must be dismissed.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the

*Renewed Motion to Dismiss Crossclaim of Central West Virginia Regional Airport Authority, Inc.*

(Document 15) be **GRANTED** as to the claim for contribution and **DENIED** as to the claims for

indemnity and legal malpractice.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:     February 25, 2022

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

16